## Lougee, &c. vs Colton, &c.

ERROR TO THE JEFFERSON CIRCUIT.

*Pleading. Distress for rent.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

REPLEVIN.

*Case 50.*

*October* 20.

As there was a joint demurrer to the three several pleas to the landlord's avowry of distress for rent, the demurrer was properly overruled, if either of those pleas be good.

1. The first and third pleas are substantially the same: that is, that when the distress was made, the term having expired, the relation of landlord and tenant had ceased, the landlord was in possession, and the distrained goods were not on the demised premises.

2. There is nothing in any or all of these facts, as pleaded, which can avoid the avowry. At common law the landlord could not distrain after the expiration of the term, nor at any other place than on the demised premises, nor after the tenant had left those premises.

3. The *Virginia* Statute of 1748, still viewing distress for rent as a *real* and *local* remedy arising from privity of estate—in providing for distress, after the end of the term, still required that it should be made whilst the tenant was in possession. But since the enactment of the Kentucky Statute of 1811, the right to distrain for rent is not limited by the tenant's possession: no reason remains for such a restriction, which might be altogether subversive of the end and policy of this remedial statute, the first section of which authorizes distress in any county

The case stated.

Plea to an avowry of distress made for rent, "that when the distress was made, the relation of landlord and tenant had ceased, the landlord was in possession and the goods were not on the demised premises" is not good.

Since the statute of 1811, (*Statute Law*, 1356) right to destrain for rent is not limited to tenants in possession.

Lougee, &c.
vs
Colton, &c.

to which the tenant shall have removed himself and property, and a *fortiori* must be construed as intending a distress any where *in the county of the demised premises* after the tenant's removal of himself and effects from those premises.

To avoid the avowry of distress for rent, a plea strictly denying any rent in arrear, is necessary; to say that the tenant was not indebted the rents in the avowry mentioned, without denying that any was due, is not good.

The second plea is, not that there was *no rent in arear*, *but* merely that the tenant was "*not indebted the rents* in the avowry mentioned, in manner and form as avowed"—such a general plea is not an appropriate defence to such an avowry for rent. It does not necessarily import that *no rent* was due when the distress was made; and to avoid the distress, a strict plea, denying any rent in arrear, is necessary. The avowry being a special justification of an apparent trespass, cannot be met and avoided by a general plea, which, though sufficiently responsive to the general averment of indebtedness in an action of debt, ought not to be deemed sufficient to show tha ta distress, specially averred, was *tortious*, when, consistently with the form and literal effect of the plea, *as responding to a special avowry*, some rent, though not of the amount avowed, may have been in arrear, and therefore might have justified the distress as made. The effect of the plea, as pleaded, is only that the whole amount of rent, as avowed, was not due—it is not that *no* rent was due.

We are, therefore, of the opinion, that neither of the pleas in this case was good in demurrer.

And consequently, the judgment is reversed and the cause remanded, with instructions to sustain the demurrer to all three of the pleas.

### Petition for Re-hearing,
#### (By Mr. Pirtle.)

The counsel for Colton & Moore feels constrained to ask the Court to re-hear or re-consider the case. Colton & Co. pleaded that, at the time of the sueing out of the distress warrant, they were not the tenants of said Lougee and Moore; that they had *surrendered* the demised premises to them, and that Lougee and Moore were themselves in possession.

By the common law, there could be no distress after

the termination of the lease, because, then there was no longer a tenant to a landlord; but during the lease, it did not matter whether the tenant was in actual possession or not. By the Virginia statute of 1748, it was made lawful to distrain for rent in arrear, after the determination of the lease, in the same manner as if it had not been determined: *"provided,* that such distress be made within six months after the determination of such lease, and during the continuance of such landlord's title or interest, and during the *possession of the tenant,* from whom the arrears became due." This is the only enactment that has pretended to change the common law *as to the time when* distress can be made for rent. The act of 1811 of this State, speaks alone of *the place;* that is, it takes off the restriction of the common law, which confined the taking to the demised premises. Suppose a statute had passed, saying, that distress for rent might be made at any *place* as well as on the premises, would this alone have authorized this rigorous process after the *expiration* of the lease? One might be allowed to think not; because the place is one thing, and the time when the right to distrain at all shall end, is another thing. The party may well have his distress warrant to range all over the State during the lease, and still not necessarily have the right to have a warrant at all, after the lease has expired.

If the limitation, *"during the possession of the tenant,"* is to be deemed abrogated or repealed, why not dispense with the restriction of "six months" and the "continuance of the landlord's title?" If there be nothing *real* between landlord and tenant, and the remedy, extraordinary and *ex parte,* is to have no restraint of time, as fixed by the common law, barely because it has none of place, why regard the "six months?" And, if it is entirely *personal,* and therefore the tenant's possession, or the expiration of his lease is not to be regarded, why look to the six months or the landlord's interest in the premises either? Throw off these restraints in the act of Virginia, and we will have distress by any one who may sue it out, twenty or thirty years after all privity of estate has ceased between the parties, who did, indeed,

once occupy the relation of landlord and tenant, and this too, by executors or heirs, acting in good faith, to whose hand, writings, testifying demises and covenants for rent may come, but when nothing is, in truth, due. But if we only extend this harsh and one-sided proceeding, as the law may plainly authorize it, we shall obey a maxim not unworthy the regard of freemen, that all statutes extending a proceeding out of doors and *ex parte*, for the enforcement of a right by seizure and sale, are to be rigidly construed.

Rents are *real* in many respects—they pass to heirs, and a privity between the heir and the tenant arises from this. The assignee of the reversion, and the tenant, subtenant, or assignee of the lease, have their respective privities and rights and liabilities arising from the *real* relation; and there is a privity, *real* in fact and in law, arising between landlord and tenant, just because one owns the land and the other occupies or enjoys it; and it seems to the counsel that there may be reason for allowing distress for rent during this enjoyment of another man's land or his house, that may not exist after this relation of privity has ceased. It was allowed originally, only because the tenant held the other's property, owed, and did not pay. After he has surrendered to him who was his landlord, he is no longer his tenant, and, *prima facie*, society would think he did not owe; and if he did, the debt might be enforced in the courts of justice.

It is an old rule, in the construction of statutes on the same subject, that they shall be taken *in pari materia*, and if, when viewed together, the provisions of each can stand, one shall not repeal the other. Now, apply this rule to these statutes, and where is any inconsistency as to the *time* when distress may be made? The act of 1811, (*Stat. Law*, 1356) provides, "that if the tenant has removed himself and property out of the county where the land lies, then and in that case, the warrant of distress may be directed to, and executed by, any sheriff or constable of the county to which said tenant has removed his or her property." Surely this may have its operation, and yet the distress be confined to the time fixed by the section quoted from the previous statute.

It is frequently the case during a lease, that the tenant removes out of the neighborhood, perhaps out of the county, still holding the premises by himself or his sub-tenant. In such case, the law as it stood in 1811, is changed, and distress may be made off the premises, and even out of the county. Where the tenant has not re-moved even off the premises, the act of 1811 authorizes his "goods, chattels and slaves" to be taken, as well off the land as on it; but this may well stand with the for-mer law, as to the period within which this may be done. There is nothing in the act of 1811 that intimates a dis-tress, after the relation of landlord and tenant has ceas-ed. It commences, "that when any landlord shall wish to distrain on *his tenant*, or any person claiming or *occu-pying* under him," &c. not *on one* who had held as his tenant—and the warrant is to be directed to the officer "*of the county where the land lies:*" (*see* 1*st section*) why this, if there is not a looking to the *realty* and the privity springing out of the real relation? Then the dis-tress is to be made on the property "of the said tenant, or of any under-tenant, claiming and occupying said land," looking to the present, not to the past.

Leases will be dangerous things, if he who was land-lord, shall be allowed, after the possession is quietly sur-rendered to him, and he who was tenant has gone his way, to take out this catching process and seize whatev-er he may find.                                   HENRY PIRTLE.

## RESPONSE,
### (By Chief Justice Robertson.)

The petition concedes, that the act of 1811 authorizes a distress after the tenant has left the demised premises, but seems to insist, if we understand it in this respect, that this statutory right is restricted to cases in which the demise had not expired, and in which also rent was due before the expiration of the term, and there was therefore a right to distrain during the subsistence of the lease. Such a deduction is, in our opinion, clearly in-admissible, according to the common law, confirmed by the statute of *Marlb.* 52, *H.* 3, 15—no landlord could

*Margin notes:*

LOUGEE, &c.
*vs*
COLTON, &c.

The stat. Marl-bridge, 52, H. 3, 15, authorized distress alone on the demised pre-mises, 8 Ann 14, authorized dis-tress at any time within 6 months after the end of the term, if les-sor's title and tenant's posses-sion still contin-ued.—This latter provision is re-

LOUGEE, &c.
vs
COLTON, &c.

*enacted by Virginia stat. 1748, sec. 11 and 12, (Statute Law, 1354,) by the Ky. statute of 1811, 1356, distress may be made at any time within six months after the expiration of the lease, and authorized the issuing of the warrant of distress to any county in the Commonwealth, to which tenant might have removed his effects.*

distrain elsewhere than on the land out of which the rent issued. The *Stat. 8th Ann.* 14, authorized distress during six calendar months after the end of the term, if the lessor's title and the tenant's possession still continued; and this provision is re-enacted by the 11th and 12th sections of the Virginia statute of 1748, (*Stat. Law,* 1354.) Therefore, when the Kentucky statute of 1811, (*Ib.* 1356) was enacted, distress might have been made at any time *within six months after the expiration of the* lease, but could be made only on the demised premises, and whilst the tenant remained there. But this latter enactment authorized a *landlord, as long as he had a right to distrain,* to have his distress warrant issued to any county in the Commonwealth, to which the tenant had removed himself and effects. This also is conceded by the petition. And in the case of *Mitchell* vs *Franklin,* 3 J. J. M. 482, it was decided that since this act of 1811, the right of distress was not confined to goods on the leased land.

Then why should the provision of the act of 1811, authorizing distress after the tenant's removal, be restricted to the continuance of the term? Such an interpretation is unauthorized by the letter and the objects of the statute of 1811, whether considered alone or in connection with the common law and other statutes, on the subject of distress.

Under the statute of 1748, the landlord had a right to distrain for six months after the expiration of the lease; but that right might have been lost by the tenant's removal. The act of 1811 comes in and provides that the right to distrain under the pre-existing law, should not depend on the continued possession of the tenant, nor be affected by his removal. We can perceive no authority for any other interpretation, and it does seem to us, that any other would virtually frustrate the evident purpose of the Legislature, and might, in a great degree, abrogate distress for rent in Kentucky, where, in most cases, it is not collectable until the end of the lease. The act of 1748 authorized distress after the expiration of the term, whether the rent was due before or after that time, but limited the distress to six months, and to the

demised land. The act of 1811 authorizes the distress after the tenant's removal, and thus repeals so much, and only so much, of the act of 1748 as adhered to the old feudal doctrine, and therefore did not permit distress af. ter the tenant had left the premises.

It is neither denied, nor can be doubted, that now, in Kentucky, the tenant's goods may be subject to distress though not on the demised premises, and that there may be distress for rent after the expiration of the term. Why then should the possession of the tenant be indis- pensable to the right to distrain? Can any consistent reason be assigned for such an anomalous requisition? And if, as is admitted in the petition, a landlord, whose rent was made payable during the term, may distrain, notwithstanding the removal of his tenant before the ex- piration of the term, why may he not distrain if the re- moval be after the end of the term, and whilst the right to distrain would have existed, had the tenant continued on the land? And why should a landlord, whose rent was not collectable until the close of the term, lose his reme- dy by distress, by the tenant's surrender or removal at or before the expiration of the term, when, if he had con- tinued only a fraction of a day longer in possession, the right of distress would have accrued, and would have continued for six months, notwithstanding the tenant's removal within that period. The statute of 1811 makes no discrimination as to the time of removal. It only gives the landlord the same right to distrain, after remo- val, as he would have been entitled to had there been no removal. It certainly does not require that the removal shall have been after the rent became due and distrain- able. Had it made any discrimination as to the time of removal, would it not have provided for a removal be- fore the right to distrain had accrued, rather than for a removal, after the landlord had acquired that right, and failed immediately to enforce it? The obvious effect of the statute seems to us to be, that the tenant cannot de- stroy the right of distress by removing at any time when, had he not removed, the landlord would have had a right to distrain.

Since the act of
1811, the right of
the landlord to
distrain for rent,
exists on or off
the leased prem-
ises for 6 months
after the expira-
tion of the lease.

And consequently, in our opinion, the right to distrain now exists here, on or off the demised premises, for six months after the expiration of the lease, unaffected by the tenant's removal during that period, whether before or after the rent became due, or before or after the end of the term.

The petition is therefore overruled.

*Wheatley* for plaintiffs; *Pirtle* for defendants.